**Ruth Ann CAMPBELL, Widow of Darlis Campbell, Deceased, Appellant,**

v.

**HAULER'S INC.; Hon. John B. Coleman, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**Hauler's Inc., Cross–Appellant,**

v.

**Ruth Ann Campbell, Widow of Darlis Campbell, Deceased; Hon. John B. Coleman, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.**

Nos. 2009–CA–001727–WC, 2009–CA–001889–WC.

Court of Appeals of Kentucky.

Sept. 3, 2010.

McKinnley Morgan, London, KY, for appellant.

H. Brett Stonecipher, Lexington, KY, for appellee, Hauler's Inc.

Before COMBS, LAMBERT, and THOMPSON, Judges.

*OPINION*

THOMPSON, Judge:

This is an appeal and cross-appeal from an opinion of the Workers' Compensation Board that reversed in part, vacated in part, and remanded the claim to the Administrative Law Judge for further findings of fact. The sole issue in this appeal and cross-appeal is whether the Workers' Compensation Board has the right to remand the opinion of the ALJ to the ALJ for further findings of fact. We conclude that this is within the absolute discretion of the Workers' Compensation Board and that future appeals on this issue may be considered by this Court as frivolous.

We emphasize that we do not decide whether the original opinion of the ALJ was incorrect. The ALJ based his opinion upon the testimony of Dr. George Nichols, former Kentucky Medical Examiner, which could constitute sufficient evidence for the decision by the ALJ. However, the Workers' Compensation Board has the absolute discretion to request further findings of fact from an ALJ. Therefore, we find no error and affirm.

Ruth Ann Campbell, the widow of Darlis Campbell, filed a claim for survivor benefits as a result of her husband's fatal heart attack that occurred while he was operating a dump truck during the course of his employment. The contested issues are whether Campbell's heart attack arose out of the course and scope of his employment with Hauler's Inc. and whether Ms. Campbell is entitled to two years of widow's benefits.

This case presents an unusual fact situation and one that renders the issue of causation problematic to resolve. On the date of his death, Mr. Campbell was fifty-two years old and was morbidly obese. He suffered his first heart attack at age

sixteen and had been seeing Dr. Reddy, a cardiologist, every three months.

At the time of his heart attack on March 12, 2007, Mr. Campbell was operating a Hauler's Inc. dump truck northbound on I–75 in a three-truck convoy. Scott Welborn was operating the lead truck in the left hand lane and Campbell followed in the right hand lane. Tim Curry followed Campbell in the same lane.

Welborn testified that Campbell was approximately three car lengths behind him in the right lane and Curry about three car lengths behind Campbell traveling 45–50 mph. When the convoy approached a construction zone, Welborn was required to merge into the right lane. In preparation, Welborn viewed into his right mirror and saw Campbell slumped into the passenger seat. He looked a second time and saw that Campbell remained slumped into the passenger seat. When he looked a third time, the accident had occurred. He estimated that one minute had passed between the first time he saw Campbell and the accident. After the accident, he approached Campbell's truck and found Campbell lying over the shifting mechanism with his head and shoulders in the passenger side of the floorboard.

Curry testified that he was directly behind Campbell and ultimately rear-ended Campbell's truck. He estimated that he was traveling 60–65 mph at the time of the accident and explained that Campbell's truck suddenly stopped without warning.

Following the impact, Campbell's and Curry's trucks crossed the median and entered the southbound lanes before resting against an embankment. Curry looked into Campbell's truck as they went across the median but could not see Campbell. When he approached Campbell's truck immediately after the accident, Campbell was slumped from his seat to the passenger floorboard and his face was purple.

Curry was allowed to speculate as to how he believed the accident occurred. He testified that he believed Campbell had a heart attack and reached for his hand break. However, he failed to grab the hand brake and fell in the passenger side. He further testified that Campbell would not have been able to see behind him when he was slumped over and, thus, would not know that Curry's truck was about to strike his truck.

An autopsy was performed by Dr. Jennifer Schott who opined that Campbell died from atherosclerotic and hypertensive cardiovascular disease, with obesity as the contributing cause of death which she listed as "natural."

Ms. Campbell's medical evidence consisted of four letters issued by Dr. George Nichols, a pathologist. In his initial letter dated June 23, 2008, he agreed with Dr. Schott as to the cause of death. He further noted that from his review of the autopsy report, the death certificate, and Campbell's medical records, Campbell's heart was improperly pumping blood prior to the collision. However, he stated that he could not make a final determination regarding the manner of death until he studied the accident report and witness statements.

In a letter dated one week later addressed to the widow's counsel, Dr. Nichols opined that the knowledge of the impending collision could have caused Campbell's heart attack.

In a letter dated August 5, 2008, Dr. Nichols indicated that he had visited the accident scene and that slowing or stopping in the traffic lane represents conscious activity by Campbell. As a consequence, he opined that the collision and events surrounding the accident were substantial contributing factors to Campbell's death.

Finally, in a letter dated September 3, 2008, Dr. Nichols opined that based on the autopsy, Campbell died after impact. He concluded as follows:

> It is my opinion that no traumatic injuries of lethal proportion are present. The cause of death, in my opinion, is cardiac rhythm disturbance due to existing heart disease, pre-crash anxiety and post-crash catecholamine surge. The events surrounding the crash were substantial contributing factors leading to his death.

Dr. Hal Skinner, a cardiologist, offered his opinion as to Campbell's death and disagreed with Dr. Nichols. After noting that Campbell was morbidly obese and had a history of nonischemic cardiomyopathy, he opined that:

> It is not possible within a reasonable probability to causally relate Mr. Campbell's cardiac arrest to either his specific work on the date of death or to his general duties as part of his occupation.

He specifically rejected Dr. Nichols' opinions:

> This case was reviewed by Dr. George Nichols who indicated that Mr. Campbell was alive following the motor vehicle accident as evidenced by hemorrhages and concluded that the shock of the wreck as well as the anxiety he experienced in anticipation of the wreck were substantially contributing factors to his death. I profoundly disagree with the findings of Dr. Nichols. From the evidence of the case, it is clear that the patient suffered from a major cardiac event prior to the wreck and this was likely an arrhythmia ventricular tachycardia or ventricular fibrillation, it still could have been several minutes during which the heart continued to pump blood before all cardiac function ceased. Certainly there would have been plenty of time after the initial event for the pa-

tient's vehicle to be hit by the other car and to have suffered the lacerations occurring while the heart was still functioning albeit in a terminal status.

The ALJ reviewed the evidence and was persuaded by Dr. Nichols' opinion. In his final opinion and award, he expressed his findings regarding causation as follows:

> Piecing together this evidence, a likely scenario is that the plaintiff was reaching for something in his seat and may have been temporarily non-attentive to the traffic conditions. He then likely slammed his brake in an effort to avoid what he thought was an impending collision after he looked up from his seat.

The ALJ awarded a one-time lump sum benefit pursuant to KRS 342.750(6) and awarded fifty percent of Campbell's average weekly wage pursuant to KRS 342.750(1)(a).

Hauler's Inc. timely filed a petition for reconsideration requesting additional findings. After the ALJ denied the petition, Hauler's Inc. appealed to the Board.

The Board reversed in part, vacated in part, and remanded the matter to the ALJ with instructions that the issue of causation be readdressed and to render specific findings of fact as to how the accident occurred. It further held that KRS 342.730(4), which provides a minimum of two years of widow's benefits, applies only to an employee. Because Ms. Campbell was born on July 9, 1944, and qualified to receive Social Security benefits, the Board found that she was ineligible for widow's income benefits.

Ms. Campbell argues that the ALJ's award was based on substantial evidence and, accordingly, should have been affirmed by the Board. She also contends that the Board erred as a matter of law when it reversed the ALJ's award of two-years' weekly widow's income benefits.

Hauler's Inc. cross-appeals contending that the Board erred when it remanded the matter to the ALJ for additional findings and, instead, should have remanded with directions that the case be dismissed because there is no evidence that Campbell's heart attack was work-related.

We first discuss Ms. Campbell's contention that there was substantial evidence to support the ALJ's conclusion that Campbell's heart attack was caused by the anxiety of the pending collision and a post-crash adrenaline surge or whether the heart attack occurred and Campbell died prior to the accident.

■ In workers' compensation claims, the claimant bears the burden of proof with regard to every element of the claim. *Durham v. Peabody Coal Co.*, 272 S.W.3d 192 (Ky.2008). Because Ms. Campbell was the party with the burden of proof and was successful before the ALJ, the ALJ's conclusion must be affirmed if supported by substantial evidence. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky.1971). However, the Board concluded that the ALJ failed to articulate the substantial evidence that supported his determination that the accident caused the fatal heart attack. We agree.

■ The fact that Campbell's heart attack occurred while at work does not, in and of itself, establish causation. *Roberts v. Estep*, 845 S.W.2d 544, 547 (Ky.1993). In heart attack cases, causation is a factual determination based on a legal concept for the purpose of determining whether or not the work was the legal cause or only the stage on which an inevitable tragedy occurred. *Hudson v. Owens*, 439 S.W.2d 565, 570 (Ky.1969). Indeed, proving cau-

sation is often elusive and requires that the fact-finder review the medical evidence and non-medical evidence. It is imperative that the fact-finder support his or her "conclusions with facts drawn from the evidence in each case so that both sides may be dealt with fairly and be properly apprised of the basis for the decision." *Shields v. Pittsburgh and Midway Coal Min. Co.*, 634 S.W.2d 440, 443 (Ky.App. 1982).

■ The Board reviewed the evidence and, after emphasizing that it is not its role to make findings of fact, concluded that Hauler's Inc.'s request for additional findings of fact should have been granted. The Board explained:

> After careful examination of the ALJ's opinion and award and the entire record, this Board cannot say that the ALJ has adequately articulated the causal connection between the accident and Campbell's fatal heart attack. While the ALJ concluded that the "likely" scenario is that Campbell looked up to what he believed was an imminent accident and slammed on his brakes, the record does not reveal a shred of evidence in support of this conclusion. Additionally, after a careful review of the final opinion and award, the Board cannot ascertain what "impending collision" the ALJ believed shocked Campbell into the fatal cardiac event if Campbell did in fact look up.

Without additional findings of fact by the ALJ, the Board and this Court are unable to afford meaningful review of the basis for the ALJ's conclusion regarding the cause of Campbell's heart attack. As a result, the Board declined to address the substantial evidence question and, instead, remanded the matter to the ALJ for additional findings. We agree with the Board that under the difficult factual questions regarding causation, that a remand to the

ALJ for further findings is warranted. We, therefore, affirm.

Finally, we address the Board's resolution of the issue regarding the award of two years of widow's income benefits. The issue presents a question of statutory construction and, therefore, is subject to *de novo* review. *Wilson v. SKW Alloys, Inc.*, 893 S.W.2d 800, 801–802 (Ky.App.1995). We are guided in our review by the rule of statutory construction that if the language of the statute is "clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted." *Autozone, Inc. v. Brewer*, 127 S.W.3d 653, 655 (Ky.2004).

KRS 342.750(1)(a) provides weekly income benefits of fifty percent of the worker's average weekly wage to be paid to the widow of a deceased worker with no dependent children, as in the present case. However, the statute further states: "All benefits awarded pursuant to this section, other than those provided in subsection (6) of this section, shall be subject to the limitations contained in KRS 342.730(4)." KRS 342.730(4) states as follows:

> All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs. In like manner all income benefits payable pursuant to this chapter to spouses and dependents shall terminate when such spouses and dependents qualify for benefits under the United States Social Security Act by

reason of the fact that the worker upon whose earnings entitlement is based would have qualified for normal old-age Social Security retirement benefits.

KRS 342.730(4). Because Ms. Campbell was sixty-two years old at the time of her husband's death and qualified for Social Security benefits under 42 U.S.C.A. § 402(e), Hauler's Inc. argues that she was not entitled to income benefits. We agree.

In *Morsey, Inc. v. Frazier*, 245 S.W.3d 757 (Ky.2008), the Court held that a widow's award of income benefits terminated when she qualified for Social Security benefits. Thus, following *Morsey*, Ms. Campbell was not eligible to receive income benefits. Nevertheless, the ALJ held that the two-year provision contained in the first sentence of KRS 342.730(4) applied. However, the clear and unambiguous language of the statute states that the two-year provision applies to income benefits awarded to employees and is not contained in the sentence applicable to spouses and dependents. Therefore, the only reasonable interpretation of the statute is that the legislature did not intend for spouses and dependents to qualify for a minimum two years of income benefits.

Based on the foregoing, the opinion of the Workers' Compensation Board is affirmed.

LAMBERT, Judge, concurs.

COMBS, Judge, concurs in result only.